The report of the referee is a very clear and intelligent statement of the controversy, and from the findings we gather these facts, supported by ample evidence:
The defendant conveyed to plaintiff, with covenants of seisin and warranty, certain timber on a boundary of land, particularly described, lying in Swain County, in consideration of one thousand dollars cash and other considerations expressed in the written contract. The plaintiff contracted to cut and manufacture into lumber the kind of timber *Page 65 
conveyed and to pay stumpage as it was cut. Prior to execution of the contract defendant sent its agent to point out the boundaries to plaintiff's agent, which was done. Plaintiff, immediately upon the signing of the contract, moved his logging outfit, consisting of oxen, horses, sawmills, etc., upon the boundary, beginning work in the fall of 1913, and continuing until about 1 February, 1915, when he ceased work and removed his logging operation from the property.
Prior to plaintiff's removal from the property, the Whiting Manufacturing Company, claiming a large section of the boundary included in plaintiff's contract, caused an injunction to issue from the Superior Court of Swain County against the plaintiff and the defendant, enjoining the plaintiff from going upon that portion of the tract of land claimed by it. Plaintiff ceased work at once as he was then (62) operating on the disputed territory, upon which he had already cut 121 cords of wood at an expense of $272.25, constructed a flume, built roads, and made all necessary preparations for logging.
After plaintiff was enjoined from further operation on the section of this boundary claimed by Whiting Manufacturing Company, no effort was made by the defendant to adjust the controversy, nor was any offer made to turn over to plaintiff any other lands in lieu of the boundary claimed by the Whiting Manufacturing Company. The plaintiff, after allowing his mills and teams to remain idle several weeks, having practically completed all of the operation on the remainder of the boundary, removed his teams, mills and logging equipment, and demanded settlement under his contract with the defendant.
The referee found as a fact that the land which plaintiff was prevented from cutting over because of the injunction contained 180 acres, mainly situated on the watershed of Ledbetter Creek, and the said boundary included a large amount of the best timber on the entire boundary; that said land had been pointed out to plaintiff's agent prior to the signing of the contract by the agent of the defendant as being a portion of the boundary included in the contract.
The referee, finding as a fact that the time plaintiff was enjoined by the Whiting Manufacturing Company he had completed the logging of remainder of the boundary, concluded as a matter of law that the failure of title on part of the defendant to 180 acres of land covered by its contract with the plaintiff was such a breach of contract on part of the defendant as justified the plaintiff in abandoning the further prosecution of the contract, and when he had thus rightfully terminated the same that the parties were at arm's length and entitled to a settlement of all matters between them, including the question of damages sustained by either party and any sums due by either of said parties to the other under the terms of the contract. *Page 66 
The findings of fact of the referee are all supported by evidence and have been approved by the judge. In such cases it is well settled that we will not undertake to review them. Dumas v. Morrison, 175 N.C. 435;Maxwell v. Bank, 175 N.C. 180. This renders it unnecessary to consider many of defendant's exceptions.
The defendant excepts to the ruling of the court sustaining the referee's first conclusion of law: "That the failure of title on part of the defendant to 180 acres of land covered by its contract with the plaintiff under the conditions stated in referee's 13th, 14th, 15th, 16th, and 17th findings of fact was such a breach of the contract on part of the defendant as justified the plaintiff in abandoning the further prosecution of the work under said contract." We are unable to see (63) any error in such ruling. The referee had found as a fact that the lines of the boundary included in the contract were pointed out to the plaintiff's agent by the agent of the defendant before the contract was signed. The 180 acres to which title failed was included in this contract, and the inclusion of this land was one of the material inducements of the plaintiff to enter into the contract. The plaintiff had entered into the contract expecting to log this portion of the boundary and, as would necessarily follow, to secure the profits accruing from the manufacture and sale of same.
It was admitted that defendant's title to the 180 acres had failed, and that both plaintiff and defendant were enjoined from cutting on it. The plaintiff had finished logging all the remainder of the boundary and there was evidently nothing else for him to do but move away. He could not continue operations in face of an injunction binding upon himself as well as defendant. The defendant, by its contract, covenanted to and with the plaintiff that it was seized of the timber in fee and had the right to convey the same. That there was a breach of these covenants is found by the referee and not denied. Under such conditions the plaintiff had a right to abandon the contract and demand damages for its breach.
The right to rescind a contract does not rest upon fraud alone. It is often placed on other grounds than mere misrepresentation, such as warranty, or mistake, or on the ground that a vendor is held to know the truth of statements made by him concerning the property sold. Page on Contracts, sec. 152.
The plaintiff had never received back in any form the one thousand dollars advanced defendant on the contract, so it is found, and consequently is entitled to recover it, together with such damages as he sustained and that were reasonably within the contemplation of the parties.
The referee concluded as a matter of law that plaintiff was entitled to recover certain profits he would have made in cutting the timber *Page 67 
from the 180 acres of land from which he was prevented by reason of the superior title of the Whiting Manufacturing Company, together with the money he had expended on this land preparing to log it and manufacture the timber.
In his 16th finding of fact, the referee finds that this 180 acres of land was situated on the waters of Ledbetter Creek and included a large amount of the best timber to be found on the entire boundary. In his 17th finding of fact he finds that at the time plaintiff was stopped from work by the injunction that he had completed the building of the flume up Ledbetter Creek to the line of this land; that he had built a road thereto and had located on of his mills at a point accessible to said area and had commenced cutting timber on this part of the boundary; that he had incurred all the incidental expenses (64) necessary toward the operation of this portion of the boundary, and his only additional expense would have been the cutting, logging and manufacture of the lumber. Upon these findings, the losses of plaintiff can be estimated with reasonable accuracy, including such profits as he had a right to expect to make from a performance of the contract.
We think the case comes well within the rule clearly stated by JusticeHoke in Wilkinson v. Dunbar, 149 N.C. 20: "When prospective damages are allowed to the injured party as arising under a breach of contract they must be such as are in reasonable contemplation of the parties and capable of being ascertained with a reasonable degree of certainty. Absolute certainty, however, is not required, but both the cause and the amount of the loss must be shown with reasonable certainty. Substantial damages may be recovered, though plaintiff can only give his loss approximately. Compensation for prospective losses may be recovered when they are such as in the ordinary course of things are reasonably certain to ensue. The broad general rule in such cases is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained. This rule is subject to two conditions: the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they entered into the contract; that it must be such as naturally might be expected to follow this violation."
The contract between the plaintiff and defendant is set out in detail by the referee and is of such character that damages for its breach, both past and prospective, may be ascertained with reasonable certainty.
The defendant excepts to the ruling of the court upon its counterclaim. The defendant in its answer alleged that the plaintiff by his operation had damaged its property in the sum of $10,000, and set up said amount as a counterclaim. Evidence was offered by both parties *Page 68 
upon the matter. The referee found as a fact that the plaintiff had practically completed his contract; that he had taken off all of the timber included thereon on that portion of the boundary he had operated over at the time he was served with the injunction; that he had paid the defendant more than $4,000 for the timber taken off, and that this amount fully compensated the defendant for any damage to the property. These findings of fact are conclusive and disposes of the counterclaim.
Upon a review of the record, we must affirm the judgment of the Superior Court.
Affirmed.
Cited: Caldwell v. Robinson, 179 N.C. 521; Steed v. Lumber Co.,181 N.C. 509; Martin v. McBryde, 182 N.C. 182; S. v. Jackson,183 N.C. 698; Sanders v. Griffin, 191 N.C. 453; Hardy v. Thornton,192 N.C. 297; Kenney v. Hotel Co., 194 N.C. 45; Pickler v. PinecrestManor, 195 N.C. 615; Wade v. Lutterloh, 196 N.C. 119; Wilson v.Allsbrook, 205 N.C. 598; Dent v. Mica Co., 212 N.C. 242; Biggs v. Lassiter,220 N.C. 769; Hall v. Fayetteville, 248 N.C. 484.
(65)